**Loreta CRUZ FLORES, Joaquin Cruz Flores, Dolores Cruz Flores, Engracia Flores Ungacta, et al., Appellants,**

v.

**Francisco A. DUENAS and Esther M. Duenas, Appellees.**

**No. 17671.**

United States Court of Appeals Ninth Circuit.

May 21, 1963.

Arriola, Bohn & Gayle, John A. Bohn, Charles J. Williams, and Gerald Ellersdorfer, San Francisco, Cal., for appellants.

Schofield, Hanson, Bridgett, Marcus & Jenkins, Thomas M. Jenkins and John Judge, San Francisco, Cal., and E. R. Crain, Agana, Guam, for appellees.

Before HAMLEY and BROWNING, Circuit Judges, and MADDEN, Judge of the Court of Claims.

MADDEN, Judge.

This is an appeal from the United States District Court for the District of Guam. The appellees here, plaintiffs in the district court and hereinafter referred to as the plaintiffs, brought their suit for partition of real property and specific performance of an alleged contract by one of the owners to convey to them a specific tract of the property.

Our narration of the facts is based largely upon the findings of the district court, which findings are well supported by the evidence presented at the trial.

Joaquin Cruz Flores was the owner of Lot 102, Sinajana, Guam. He died at some time before September, 1945. Title to Lot 102 passed, upon his death, to his estate and his son, Juan Cruz Flores, became the administrator of his estate. The beneficial owners of the estate were Joaquin's widow, who had a one-half interest, and his five children, each of whom had a one-tenth interest. As we have seen, Juan Cruz Flores was one of the children.

In September of 1945 Juan Cruz Flores made an oral agreement to sell a certain portion of Lot 102 to the plaintiffs, Fran-

cisco A. Duenas and Esther M. Duenas. They were, under the agreement, to pay Juan Cruz Flores $3,000 in money or commodities. No time or terms of payment were agreed upon, and no survey showing just what part of Lot 102 was covered by the agreement was made at that time. There was, apparently, oral agreement as to what land was to be conveyed.

The Duenas moved onto the land in 1945 and built a lunch counter for serving the pupils of a school which was near by. In 1946 they built another building, a two story permanent type building which they used for their residence.

In 1946 the widow of Joaquin Cruz Flores died. Her one-half interest in Lot 102 passed to her estate, her son Juan Cruz Flores was the administrator of her estate, and the beneficiaries were himself and the other four children of Joaquin Cruz Flores. Each of them now owned a one-fifth interest in Lot 102.

In 1948 a sister of the plaintiff Esther M. Duenas built a frame residence on the premises. In 1952, taxes first became payable on Lot 102. No taxes had been levied on land, at least in this part of Guam, since some time prior to 1945. The Duenas paid the taxes for 1952 and thereafter on all of Lot 102 (there being no separate assessment of any part of Lot 102) except as we shall indicate later herein.

Beginning in 1945, at the time of the oral agreement of sale and purchase, the plaintiffs from time to time down to 1956 paid Juan Cruz Flores the agreed $3,000, in cash, lumber, concrete, iron roofing, machinery, and groceries.

In 1954, when most but not all of the $3,000 had been paid, the Duenas began to request a deed to the part of Lot 102 covered by their oral agreement. In February, 1956, a survey was made by an unlicensed surveyor who was, however, working for a licensed surveyor, Juan Cruz Flores and the Duenas being present and pointing out to the surveyor the intended location on the ground of the property lines. The survey showed Lot 102 as a whole, Lot 102–1 as a part of Lot 102, and the remaining part of Lot 102. Lot 102–1 is the land involved in this suit. On the survey map, Lot 102 as a whole bears the legend H.O.[?] (meaning heirs of) Joaquin D. Flores. Lot 102 minus Lot 102–1 is similarly marked. Lot 102-1 is marked "Juan C. Flores, H.O.[?] Joaquin D. Flores," (meaning heir of Joaquin D. Flores). Juan C. Flores signed his name on the survey map.

The Duenas, in 1955 or 1956, completed their payment of the $3,000. Beginning in 1954 and down to the time of the death of Juan Cruz Flores in 1959, the Duenas sought, from time to time, to get Juan Cruz Flores to meet with the Duenas' lawyer and make a deed of the property to them. No such meeting was ever accomplished. In 1958 Juan Cruz Flores paid the taxes on Lot 102. He died in 1959. In 1960, when Mrs. Duenas went to pay the taxes, she found that someone else had paid them.

There were two obvious obstacles in the path of the plaintiffs toward legal ownership of the tract of land which they sought in this suit. The first was the fact that Juan Cruz Flores, who purported to agree to sell it to them, did not own it. He owned, beneficially, only a one-fifth undivided interest in it, as well as a one-fifth undivided interest in all the rest of Lot 102. The second obstacle is the Statute of Frauds, Sections 1971 and 1973(4), Guam Code of Civil Procedure, and Section 1624(5) of Guam Civil Code. These sections require that an agreement to sell real property must be evidenced by a note or memorandum in writing signed by the seller or his agent authorized by writing to make the sale.

As to the Statute of Frauds, the district court held, we think correctly, that there was part performance which created in the plaintiffs an equitable right to compel the oral vendor to convey the property covered by the oral agreement. The plaintiffs took possession, made substantial improvements and paid the taxes on the land, except as

above noted. The lack of original definiteness as to the time and terms of payment is made irrelevant by the fact that all the agreed consideration was paid and was acceped by the vendor without objection. The lack of a definite survey at the time the contract was made was supplied by the survey made, and agreed to by the vendor, in 1956. See 1 Corbin on Contracts, page 437, on part performance and the Statute of Frauds. If, then, Juan Cruz Flores had been the owner of Lot 102–1, the plaintiffs would have been well entitled to a decree of specific performance against him or his successors in title.

Juan Cruz Flores, as we have seen, owned an undivided one-fifth interest in all of Lot 102. He was the administrator of the estate of both his father and his mother, from whom title to Lot 102 had descended to him and his sisters and brother, who, along with his administrator, are the defendants in this case. Juan Cruz Flores, as administrator, was the one who would have taken steps to dispose of the land in his parents' estates. The sisters and brother, defendants in this case, lived nearby. The possession of the plaintiffs and their construction of buildings on the land was obvious notice that they were claiming a right in the land. The defendants, having stood by and permitted the plaintiffs to make these improvements and to continue to make payments to Juan Cruz Flores, should be estopped from asserting their ownership and thus appropriating the plaintiffs' improvements and disappointing their expectations, unless such an estoppel would work an inequity upon the defendants. It would not work an inequity. The land which Juan Cruz Flores agreed to sell to the plaintiff was less than one-fifth of the total area of Lot 102. There is no evidence that the part of Lot 102 which became Lot 102–1, in its unimproved condition was more valuable than other parts of Lot 102. The partition ordered by the district court leaves the defendant co-owners of Lot 102, other than the administrator of the estate of the vendor himself, Juan

Cruz Flores, with an interest in Lot 102 equivalent to the interest which they had before the plaintiffs' contract was made.

The judgment of the district court is affirmed.